# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| COVENANT MEDIA OF ILLINOIS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 3453 |
| | ) | |
| CITY OF ELGIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Elgin's ("City") motion for summary judgment and the parties' motions to strike. For the reasons stated below, we grant the City's motion for summary judgment and deny the motions to strike as moot.

## BACKGROUND

Plaintiff Covenant Media of Illinois, L.L.C. ("Covenant") alleges that it is in the business of erecting and operating commercial and non-commercial advertising signs that are utilized by businesses, churches, organizations, and individuals. In 2004, Covenant leased space for fourteen signs at several business properties in the

1

City. Subsequently, in three separate groups of applications, Covenant filed for sign permits with the City for the fourteen signs ("Applications"). According to Covenant, on April 12, 2005, a City official ("Official") called Covenant's representative and informed Covenant that the Applications "could not be processed because the City did not allow signs with off-premises messages." (Compl. Par. 19). Covenant claims that it asked the Official to provide the denial in writing and the Official refused. Covenant then brought the instant action seeking to have the City's Sign Ordinance ("Sign Ordinance") declared unconstitutional. In October of 2005, the City enacted an Amended Sign Ordinance, which replaced the Sign Ordinance that was in effect when the Applications were denied by the City.

Covenant alleges in its complaint that the Sign Ordinance unconstitutionally favors commercial over noncommercial speech (Count I), the permit requirements lack necessary procedural safeguards (Count II), the Sign Ordinance grants City officials an impermissible level of discretion to approve or deny permits (Count III), the Sign Ordinance impermissibly discriminates among noncommercial messages (Count IV), the Sign Ordinance prohibits far more speech than can be justified by the City's asserted interests (Count V), the Sign Ordinance does not directly or materially advance governmental interests (Count VI), the Sign Ordinance unduly burdens the ability of citizens and property owners to engage in protected First Amendment activity using fundamental means of communication (Count VII), the Sign Ordinance impermissibly favors some commercial topics at the expense of

others (Count VIII), the Sign Ordinance violates Covenant's equal protection rights

(Count IX), the Sign Ordinance is vague and violates Covenant's due process rights

(Count X), the regulations are not narrowly tailored to promote the interests asserted

by the City (Count XI), the Sign Ordinance is unconstitutional for additional reasons

(Count XII), the Sign Ordinance is unconstitutional as it applies to third parties

under the overbreadth doctrine (Count XIII), and that this Court should enjoin the

City from enforcing the Sign Ordinance and allow Covenant's requested signs

(Count XIV).


## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most

favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must

identify "those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial

burden may be satisfied by presenting specific evidence on a particular issue or by

pointing out "an absence of evidence to support the non-moving party's case." *Id.* at

325. Once the movant has met this burden, the non-moving party cannot simply rest

on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

The City argues that Covenant lacks standing to bring the instant action and that even if covenant has standing, the Sign Ordinance was not unconstitutional.

### I. Whether Covenant Lacks Standing

The City argues that Covenant lacks standing to bring the instant action. A plaintiff must have standing to bring suit in federal court, which means that the plaintiff must allege "(1) that he has suffered an injury in fact (2) that is fairly

traceable to the action of the defendant and (3) that will likely be redressed with a favorable decision." *Books v. City of Elkhart, Indiana*, 235 F.3d 292, 299 (7th Cir. 2000). An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, . . . [and] (b) actual or imminent, not conjectural or hypothetical . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party seeking to invoke federal subject matter jurisdiction bears the burden of establishing the required elements of standing. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

A. Whether Covenant Suffered a Concrete Injury

The City claims that Covenant lacks standing because the Applications were deficient for a variety of reasons other than the one allegedly provided by the Official orally on April 12, 2005. The City claims that two of the Applications did not list the correct location of the proposed signs, that twelve of the fourteen proposed signs would have violated the height limitations under the Sign Ordinance, and that none of the Applications were accompanied by the required lighting plan and listing of a licensed electrical contractor. Covenant contends that the only reason provided by the Official for the denial of the Applications was that the proposed signs were off-premise signs and Covenant claims that the reasons now presented by the City are merely *ad hoc* rationalizations offered to justify the City's prior decision. Covenant also claims that the Official refused to provide a written

denial of the Applications when Covenant requested one.

The evidence provided by Covenant shows that the Official orally indicated only that the Applications were denied because the signs were off-premise signs and that the Official refused to provide a written explanation for the denial. Considering those facts, we cannot infer in favor of the City that the Official denied the application for a variety of other unspoken reasons. The City has not pointed to evidence that would indicate that the Official, when denying the Applications, recognized the many deficiencies in the Applications that the City now points to in its motion for summary judgment.

The City also argues that even if the additional reasons for the denial of the Applications are *post hoc* rationalizations, the City should be allowed to raise them now because standing is a jurisdictional issue and cannot be waived by a party. However, the City's logic is flawed, in that the additional reasons for the denial of the Applications do not in and of themselves relate to Covenant's standing. For example, in order to determine whether there is federal subject matter jurisdiction in this action, we do not limit our inquiry to whether Covenant submitted a lighting plan with the Applications. The deficiencies in the Applications are only relevant, when placed in the proper context and when viewed with all of the other relevant facts, as a way to gauge the City's conduct and the rights of Covenant that were affected. In the instant action, based upon the record before us, we cannot infer that the City denied the Applications for any reason other than the one expressed by the

Official at the time the Applications were denied. Thus, the City cannot contend that the Applications would have been denied for many reasons other than the one reason provided by the Official because the record shows that, had the Official not found a violation of the off-premises sign provision, the Applications would have been approved by the City. There is not sufficient evidence that would indicate that the many deficiencies now raised by the City would have come to light after the approval of the Applications or that the permits issued in connection with the Applications would have been revoked after the Official approved the Applications. Covenant applied for sign permits and those sign permits were denied by the City and Covenant was thus denied economic advantages of posting their signs in the City. Thus, Covenant has alleged that it suffered a concrete injury.

    <u>B. Lack of Non-Commercial Speech</u>

    The City argues that Covenant lacks standing because it did not engage in a substantial amount of non-commercial speech. However, the City fails to cite any controlling precedent to support such a standard. We note that the City cites *Advantage Media, LLC v. City of Eden Prairie*, 405 F.Supp.2d 1037, 1042 (D. Minn. 2005), which quotes *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 504 (1981). However, in *Metromedia, Inc.*, although the Court touched on distinctions between commercial and non-commercial speech, the Court made it clear that it has "never held that one with a 'commercial interest' in speech" could not make a facial

First Amendment challenge to a statute. 453 U.S. at 504 n.11. The City argues that

the Court in *Metromedia* noted that the billboards at issue conveyed a substantial

amount of non-commercial speech. The City claims that such a reference by the

Court in *Metromedia* shows that the Court was "concerned" with the amount of non-

commercial speech at issue. (Reply 8). However, the Court in *Metromedia* did not

state that a finding regarding the amount of non-commercial speech is required in

order to allow a First Amendment challenge to proceed. We do not agree with the

City's extrapolation of the holding in *Metromedia* which requires a showing by the

plaintiff that it engaged in a substantial amount of non-commercial speech.

Therefore, we do not agree with City's argument that Covenant lacks standing

simply because it may not have engaged in a substantial amount of non-commercial

speech.


### C. Whether Covenant's Claims Are Moot

The City argues that Covenant's claims are moot because subsequent to the

denial of the Applications, the City passed an Amended Sign Ordinance. Covenant

concedes that its request for injunctive relief is moot to the extent that its request is

directed at the Sign Ordinance. (Ans. 10-11). However, Covenant is seeking

damages in the instant action for the alleged harm resulting from the denial of the

Applications. The subsequent alteration of the Sign Ordinance would not

compensate Covenant for any harm that it suffered due to the denial of the

Applications. *See Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005)(stating that claims for damages "are not moot, even if the underlying misconduct which caused the injury has ended"). Thus, Covenant's claims in the instant action, to the extent that Covenant seeks damages, are not moot. Therefore, based upon the above, we conclude that Covenant has standing to bring the instant action.


II. Whether the Sign Ordinance Was Constitutional

Covenant alleges that the Sign Ordinance was unconstitutional. In general, "as an exercise of the police power, a zoning ordinance is presumed to be constitutionally valid" and "[t]he party attacking the ordinance bears the heavy burden of showing that the ordinance is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Clark v. Winnebago County*, 817 F.2d 407, 408-09 (7th Cir. 1987)(stating that "[t]he ordinance will be upheld if any facts either known or reasonably assumed will support it"). In addition, a government can restrict "[e]xpression, whether oral or written or symbolized by conduct" by imposing "reasonable time, place, or manner restrictions" if "they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Covenant argues that the Sign Ordinance is unconstitutional because the

ordinance was content-based, the ordinance favored commercial speech over non-commercial speech, the ordinance lacked adequate safeguards, and the ordinance was too discretionary.

We note that the City in its memorandum in support of its motion for summary judgment has argued that the prohibition of off-premises signs, which was relied upon by the Official, was constitutional and Covenant has not argued to the contrary in its answer to the summary judgment motion. The restrictions in regard to off-premises signs are limited to commercial speech and we agree that the off-premises signs provision was constitutional. *See Lavey v. City of Two Rivers*, 171 F.3d 1110, 1113-14 (7th Cir 1999)(explaining *Hudson* four part test for restriction that is limited to commercial speech).

### A. Content-Based Restriction

Covenant argues that the Sign Ordinance was content-based because it made distinctions for certain types of signs. A government "may impose reasonable, content-neutral time, place, and manner restrictions . . . , but it may regulate expressive content only if such a restriction is necessary, and narrowly drawn, to serve a compelling state interest." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995). If the justifications for the government's regulation of "speech have nothing to do with content, then the regulation is content-neutral." *Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, Fla.*, 348

F.3d 1278, 1281 (11th Cir. 2003).  In general, a regulation can be content-based only in the "most extraordinary circumstances."  *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993).

In the instant action, although Covenant makes vague references to "[n]umerous other examples" of content-based restrictions that "riddle the Sign Ordinance," Covenant has only made two specific references to categories of signs in its answer.  (Ans. 13).  Covenant contends that the Sign Ordinance provides exemptions for thirteen categories of signs.  However, the exemptions referred to by Covenant in Section 19.50.060 of the Sign Ordinance ("Section 19.50.060")  are merely exemptions from the permit process and exempt the signs from otherwise complying with the Sign Ordinance.  (SO Sec. 19.50.060).  The categories mentioned in the exemptions merely refer to types of signs such as "construction signs" and "holiday decorations," and simply alleviate the need for permits for such signage.  (SO Sec. 19.50.060).  The exemptions also merely refer to general categories of signs and do not refer to specific content in the signs.  For example, Section 19.50.060 refers to "holiday decorations," but draws no distinctions in regard to what holiday is the subject of the signage or the message included in the holiday signage.  The government has provided sufficient justifications for its treatment of the exempt categories that is not related to the content in the signs.

Covenant also complains that in Section 19.90.015 ("Section 19.90.015") of the Sign Ordinance, there are specific restrictions for political signage.  However,

Section 19.90.015 does not regulate the content of the political signage. It merely regulates politically-related signage as a whole. *See Covenant Media of Illinois, L.L.C. v. City of Des Plaines, Ill.*, 391 F.Supp.2d 682, 690 (N.D.Ill. 2005)(rejecting plaintiff's argument that the categorization of types of signs in ordinance constituted content-based regulation). There is also no evidence that indicates that "the specific motivating ideology or the opinion or perspective of" sign owners is the motivation behind any of the Sign Ordinance provisions or evidence that shows that the reason for the distinctions in the Sign Ordinance provisions that Covenant points to were made in order to regulate the content of signs. Thus the Sign Ordinance is viewpoint neutral. In addition, the City has shown that such categories are necessary to serve governmental interests such as traffic safety concerns and that the Sign Ordinance is narrowly tailored to address those governmental interests. Therefore, we find that the Sign Ordinance was not content-based and was not unconstitutional based upon the categories of signs referred to in the Sign Ordinance and the exemptions in Section 19.50.060. Also, even if the Sign Ordinance could be deemed content-based, the City has provided sufficient justification for such distinctions involving the public health, safety, and welfare and the ordinance would not be unconstitutional. The context of the Sign Ordinance provisions pointed to by Covenant and the reasons provided by the City are sufficient to rebut any presumption that the provisions are unconstitutional. *See, e.g., City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 449 (2002).

B. Whether the Ordinance Favors Commercial Speech

Covenant argues that the Sign Ordinance is unconstitutional because it favors commercial speech over non-commercial speech. Covenant points to Section 19.90.015, which defines "off premises signs" as signs that contain a variety of what Covenant deems commercial messages. Covenant argues that Section 19.90.015 provides for much more severe restrictions for non-commercial messages, such as political campaign signs. However, Covenant has not shown that the exclusion of certain types of non-commercial messages from the term "off premises signs" shows that the Sign Ordinance favors commercial speech. The Sign Ordinance necessarily draws certain distinctions among the categories of signs and there is no indication that commercial signage is in any way favored by the overall scheme of the Sign Ordinance.

C. Safeguards to Sign Ordinance

Covenant argues that the Sign Ordinance lacks procedural safeguards and that the ordinance constitutes an unconstitutional "prior restraint" on its expression. A governmental restraint of expression "in advance of actual expression" is unconstitutional if: "(1) the scheme places unbridled discretion in the hands of a government official or agency, and (2) the scheme does not limit the time within

which the decisionmaker must issue a license or permit." *Wisconsin Vendors, Inc. v. Lake County, Illinois*, 2003 WL 366580, at *4 (N.D. Ill. 2003). In the instant action, the evidence clearly shows that the City reviewed sign applications within seven business days. (SF 76). The evidence also clearly shows that the City had a policy in regard to working with applicants if applications were incomplete or if applicants were uncooperative in the application process. (SF 77-78). Covenant attempts to deny these facts, but failed to point to evidence that would support such a direct denial and thus the facts are deemed admitted pursuant to Local Rule 56.1. The Sign Ordinance contains specific deadlines for filing an appeal of an adverse decision in regard to a sign permit application and the policy of the City was to place an appeal on the next regularly-scheduled meeting of the appropriate hearing body. (SF 79-80, 86). Covenant again attempts to deny the facts, but fails to cite evidence to support the denial and simply denies Statement of Fact Paragraph 86 because Covenant deems the facts irrelevant. Therefore, the facts are deemed to be undisputed pursuant to Local Rule 56.1. The Sign Ordinance does not vest the City officials with broad discretion in determining whether to approve a sign permit. The City officials are legally obligated under the Sign Ordinance to approve permits that comply with the Sign Ordinance and deny permits that do not comply. Therefore, we find that the Sign Ordinance was not an unconstitutional prior restraint on Covenant's speech.

D. Discretionary Aspects of Ordinance

Covenant argues that the Sign Ordinance was too discretionary because City officials could decide to classify a sign under an exemption in the Sign Ordinance. Under Covenant's argument, a City official could, for example, choose to deem any sign a "holiday decoration" signage and exempt the sign from the permit process. We disagree. The term "holiday decoration" mentioned in the Sign Ordinance, when given its plain and clear meaning, would necessarily limit its usage to signage for which the purpose was primarily to focus on the celebration of a holiday. A City official would not reasonably be able to convert other types of signs at will to such a classification. Thus, the Sign Ordinance provides specific guidance to City officials. The same is true for the other categories of signs referred to by Covenant. Therefore, we disagree that the exclusion provision of the Sign Ordinance renders it too discretionary.

E. Equal Protection

Covenant alleges in its complaint that the Sign Ordinance violates its equal protection rights under the Fourteenth Amendment. For an equal protection claim, a court must first determine "whether the governmental action involves fundamental rights or targets a suspect class." *Lamers Dairy Inc. v. United States Dept. of Agr.*, 379 F.3d 466, 472-73 (7th Cir. 2004). A governmental action that "does not involve fundamental rights or target a suspect class" is "accorded a strong presumption of

validity." *Id.* In the instant action, the evidence shows that Covenant erects and operates advertising signs to earn revenue and that the Applications were filed for commercial reasons. Covenant has not shown that it falls within any suspect class and has not provided a sufficient justification regarding why the Sign Ordinance is not valid. We also note that the City has argued that the Sign Ordinance does not violated Covenant's equal protection rights and Covenant has not disputed such arguments in its answer to the motion for summary judgment. Thus, we cannot find that the Sign Ordinance violates Covenant's equal protection rights.

F. Governmental Interests and Narrow Tailoring of Ordinance

The City has pointed to various legitimate governmental interests, such as the interests in traffic safety and aesthetics, that support the categorical distinctions in Section 1990.015 and the Sign Ordinance provisions as a whole. For example, signage that is distracting could cause traffic accidents. Also, signage such as political campaign signs that overcrowds an area could detract from the aesthetics of the area. Covenant has not shown that any of the provisions of the Sign Ordinance were not narrowly tailored to satisfy the governmental interests that are the bases of the ordinance. Therefore, based on all of the above, we conclude that Covenant clearly cannot show that the Sign Ordinance is unconstitutional and we grant the City's motion for summary judgment. We deny the various motions to strike as moot since they do not affect the outcome of any of the above determinations.

16

## CONCLUSION

Based on the foregoing analysis, we grant the City's motion for summary judgment and deny the motions to strike as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   March 7, 2006